Yassin HUSSEIN, Plaintiff-Appellant,

v.

OSHKOSH MOTOR TRUCK COMPANY, Defendant-Appellee.

No. 85–2888.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1986.

Decided April 16, 1987.

As Corrected April 17, 1987.

Rehearing and Rehearing En Banc Denied June 11, 1987.

Jeff Scott Olson, Madison, Wis., for plaintiff-appellant.

James K. Ruhly, Melli, Walker, Pease & Ruhly, S.C., Madison, Wis., for defendant-appellee.

Before POSNER and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

In his amended complaint, Mr. Hussein alleged that he is an Egyptian-born, naturalized citizen and that his employer, Oshkosh Motor Truck Company (Oshkosh Truck), discriminated against him on the basis of his race. He sought relief under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII), and section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (section 1981). Holding that section 1981 protects only American Negroes, the district court granted the defendant's motion to dismiss that claim. R.30 at 1–2. After dismissing the section 1981 claim, the district court proceeded with a bench trial on the Title VII claim. The court made findings of fact and entered judgment in favor of the defendant.

We hold that the district court erroneously dismissed the section 1981 claim because the protection of section

1981 is not limited to American Negroes. Nor do we believe that principles of collateral estoppel should bar further litigation of the section 1981 claim. The plaintiff was required to bring both the section 1981 count and the Title VII count in the same complaint. Had the district court not committed legal error in dismissing the section 1981 claim, Mr. Hussein would have been entitled to a jury's resolution of those factual issues underlying his section 1981 claim and the district court would have been bound by those findings in deciding whether to grant the equitable relief requested in the Title VII count.

Accordingly, we reverse the district court's dismissal of the section 1981 claim. The case is remanded to the district court for proceedings consistent with this opinion.

## I
### Facts

In his original complaint, filed on June 24, 1983, Mr. Hussein alleged that he is an Egyptian male and that Oshkosh Truck had discriminated against him on the basis of his national origin. Specifically, the complaint alleged that, on numerous occasions, Oshkosh Truck employees referred to him as a "sand nigger," "camel jockey" and a "non-American." R.1 at 3. Mr. Hussein sought not only the equitable relief available under Title VII and section 1981 but also compensatory and punitive damages recoverable only under section 1981.[1] He demanded a jury trial on "any and all issues herein triable by right of jury." R.1 at 5.

Holding that the complaint only alleged discrimination based on national origin, and that section 1981 does not provide a cause of action for national origin discrimination, the district court dismissed the section 1981 claim. R.25. The district court refused to consider Mr. Hussein's arguments that the complaint fairly stated a cause of action for

racial discrimination because, in the court's view, section 1981 protects only American Negroes and Mr. Hussein had not alleged that he was an American Negro. *Id.* at 2. Two days later, during a final pre-trial conference, the district court granted Mr. Hussein's request for leave to file an amended complaint. Although there is no transcript of the pre-trial conference, it appears that the court imposed no time limitation on the filing of the amended complaint.

In his amended complaint, filed on January 3, 1985, Mr. Hussein alleged that he is an Egyptian-born, naturalized citizen, "not a member of the white or caucasion [sic] race, but is rather a member of the Negro or Brown race," and that Oshkosh Truck discriminated against him because of his race and national origin. R.28 at 2–3. Once again, he sought relief under both Title VII and section 1981. Stating that "it was not contemplated that plaintiff would transmute his national origin discrimination claim to a race discrimination claim, thereby affording him an opportunity to seek the forms of relief available under § 1981 but not § 2000(e)," R.30 at 1, the district court again dismissed the section 1981 claim. The district court noted that the plaintiff:

alleged that he was an Egyptian by birth. The § 1981 claim in the original complaint was dismissed because the Civil Rights Act of 1866 affords protection only to American Negroes. The amended complaint contains the allegation that plaintiff is a member of the Negro race. In view of the entire record and the proceedings to date, the amendment is frivolous. The amendment will not be allowed, and the § 1981 claim is dismissed.

*Id.* at 2. By dismissing the section 1981 count, the district court removed from the litigation the claim that entitled Mr. Hussein to a jury trial.

---

1. Under Title VII, a plaintiff may receive injunctive relief and back pay for a two-year period. 42 U.S.C. § 2000e–5(g). *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 458, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975). Under 42 U.S.C. § 1981, a plaintiff "is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." *Johnson,* 421 U.S. at 460, 95 S.Ct. at 1720 (citations omitted).

Once again, before the trial began on the remaining Title VII claim, Mr. Hussein asked the district court to reconsider its decision to dismiss the section 1981 count. Referring to Mr. Hussein's 1984 deposition testimony,[2] the plaintiff's counsel submitted that, regardless of the label used in the original complaint, from the very beginning of the lawsuit, Mr. Hussein had claimed that Oshkosh Truck had discriminated against him because of his race. Mr. Hussein argued that the amended complaint simply conformed the allegations to the evidence uncovered by discovery. In response to the request to reconsider, the court reiterated its position:

Well, I would like to state to start out with a trial judge does not have—is not in a position to write dissents to his own decisions. I suppose I could. If someone asked me whether 1981 should from a legislative point of view cover race, all races, Chinese, white, whatever you want to call it, Arabic or anything else, I might well vote as a legislator that it should. I think 1981 has been construed, and I so ruled, that it applies to protect the American Negro. It gives them certain rights.

I don't ask people to agree. I think that's the law. And if, Mr. Williamson, you're offended that the characterization was that the amendment on the eve of the trial was frivolous, I am willing to withdraw that comment. But I think the decision has to stand. Whether or not that is the best law that should be devised is another question, for appellate courts or for the legislature. But I think

that's the law, and we will proceed with the Court trial here today.

\* \* \* \* \* \*

I may be wrong in my decision. This Trial Court may be in error. I have to ask you to accept it, even though you don't agree with it. But I have been through this many times, what 1981 applies to, and I think that's the law. That's the way it has been construed by the Courts in the history of this country. Whether it should be expanded, if I was in the Supreme Court I might say maybe we should change the law. I don't think I have that discretion. So let's go forward under the statute that you're operating under.

Tr. at 9–10. The court proceeded with the bench trial on the Title VII claim and returned a verdict in favor of the defendant. R.42 at 1.

On appeal, Mr. Hussein argues that the district court erred when it dismissed his section 1981 claim. He also argues that this error deprived him of his right to have a jury resolve those factual issues that are common to both the Title VII and the section 1981 claims. On the other hand, Oshkosh Truck argues that the district court did not abuse its discretion by refusing to permit the plaintiff to amend his complaint on the eve of trial. The defendant also urges this court to apply the doctrines of res judicata and collateral estoppel to bar any further litigation of the section 1981 claim. Our task is to determine whether the district court erroneously dismissed the plaintiff's section 1981 claim; and, if so,

2. On the morning of the bench trial, plaintiff's counsel requested that the court reconsider its decision to dismiss the section 1981 count. The plaintiff's counsel directed the court's attention to the plaintiff's deposition testimony:

On January 4, 1984, in answer to a question in his deposition propounded by Mr. Ruhly to Mr. Hussein, "What did they say to you that you considered an ethnic slur?" And that's on page 242. He goes through certain ones, primarily although not exclusively relating to the fact that he is of Egyptian background.

Then Mr. Ruhly says, "Anything else?" And I would like to read the answer. It will take a moment but not longer.

"A. That I am—that I am the same like the same nigger ways in my life.

"Q. The what? Would you repeat that.

"A. They considered me just like a nigger. And the way I act. Someone he say—he pick on me and tell me I am a camel jockey or say to me you should be doing jobs like polishing shoes, like niggers do that a long time and you should be. You must like watermelon like niggers. A lot of things like that. And people, they go and say to some people I talk to "You nigger lover" if I talk to someone. And people go and tell me "You act like George in George Jefferson family" or that I am a nigger. It's nigger and foreigner, and I don't deserve here, I don't deserve to be an American citizen."

Tr. at 4–5.

whether that error requires us to remand some or all of this case to the district court for further proceedings.

## II

### Dismissal of the Section 1981 Count

#### A.

The district court refused to consider the plaintiff's section 1981 claim because it believed that the prohibitions against racial discrimination contained in section 1981 only applied to American Negroes. However, neither the Supreme Court nor this circuit has expressed such a restrictive view of the statute. In *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287, 96 S.Ct. 2574, 2582, 49 L.Ed.2d 493 (1976), noting that the statute expressly prohibited discrimination against *"all* persons," the Supreme Court rejected the argument that the protection of section 1981 is limited only to those who allege that they have been discriminated against because they are American Negroes. "Rather, the Act was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race." *Id.* at 295, 96 S.Ct. at 2586.

Furthermore, while this court has acknowledged that allegations of discrimination based on national origin do not state a cause of action under section 1981, *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir.1984), we have also noted that a complaint articulating discrimination on the basis of national origin may constitute a complaint on the basis of race when it is clear that the plaintiff is alleging that he " 'belongs to a group that is distinct from "white citizens" as a matter of race or color.' " *Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 418 (7th Cir.1986) (quoting *Anoo-*

*ya*, 733 F.2d at 50) (allegation that discrimination was based on fact that plaintiff was Korean sufficient to state a cause of action under section 1981). Here, the plaintiff's amended complaint clearly advised the court and the defendant not only that the plaintiff is "an Egyptian born naturalized citizen" but also that he is "not a member of the white or caucasion [sic] race, but is rather a member of the Negro or Brown race." R.28 at 2. The complaint further elaborated that, during his employment, the defendant had "received numerous ethnic slurs from co-employees and supervisory personnel," *id.* at 3, and went on to specify those slurs, many of which were racially-motivated.[3] The record clearly indicates that the district court applied an erroneous interpretation of section 1981 in this case.

#### B.

■ Despite the fact that the district court had an erroneous view of the scope of section 1981, Oshkosh Truck argues that we can affirm the court's judgment. It characterizes the district court's decision to dismiss the amended complaint as an exercise of the court's discretion not to accept an amendment on the eve of trial. We do not believe that the holding of the district court can be fairly given this characterization. The record, when read in its entirety, cannot support the conclusion that the district court considered the amendment to be untimely. The complaint had originally been filed in 1983; the amendment was not made until 1985. However, only two months elapsed between the time that the district court dismissed the original complaint and the time Mr. Hussein filed his amended complaint.[4] The district

---

**3.** The complaint alleged:

Specifically the co-employees and supervisory personnel have on numerous occasions referred to him as a non-white "dirty Black" and as a "sand nigger", "camel jockey". They have also referred to him as "non-American". More specifically they have told him that he was not an American and should not be taking a job from Americans and that he did not deserve to work in a plant with real Americans.

R.28 at 4.

**4.** The district court could have required Mr. Hussein to file his amended complaint by a specific date. The district court did not, however, impose such a limitation. Nor can it be argued that the court could have grounded its dismissal on unfair surprise to the defendant. The district judge's statements simply do not exhibit a reliance on this ground. Moreover, while the original complaint does not explicitly allege racial animus, it could be reasonably in-

court acknowledged that it had granted the plaintiff's request for leave to amend, R.30 at 1; therefore, some type of amendment was anticipated.

However, Oshkosh Truck focuses on the court's comment that, "[i]n view of the entire record and the proceedings to date, the amendment is frivolous." *Id.* at 2. It is not at all clear that this remark was directed at the issue of the timeliness of the complaint. Indeed, it is equally likely that the district judge was expressing his view as to the legitimacy of the amendment in light of the plaintiff's prior allegations of national origin rather than race discrimination. In any event, the district court explicitly withdrew the remark in ruling on the plaintiff's motion to reconsider. Tr. at 9. Furthermore, nothing in the record suggests that, had the district court not held an erroneous view of section 1981, it still would have dismissed the 1981 claim. Indeed, the district court had several opportunities to state explicitly that it believed the amended complaint was not timely filed. In each instance, the court returned to its view of section 1981 as the basis for its decision to dismiss the complaint.

The district court dismissed the complaint because it erroneously believed that section 1981 only applies to American Negroes. Therefore, the district court erred when it dismissed the plaintiff's section 1981 count.

### III

### Effect of the Erroneous Dismissal

Oshkosh Truck argues that, even if we hold that the district court erroneously dismissed the 1981 claim, we need not reverse and remand this case. Following the erroneous dismissal, the district court held a bench trial on the plaintiff's remaining Title VII claim. The Title VII claim was based on the same factual allegations as the section 1981 count. The court made findings of fact and conclusions of law which led it to enter judgment in favor of the defendant. R.42. Therefore, the defendant urges that the doctrine of collateral estoppel [5] bars relitigation of those issues already resolved in the bench trial on the Title VII count. Mr. Hussein, on the other hand, argues that the seventh amendment prohibits application of collateral estoppel in this case and that the district court's erroneous decision to dismiss the section 1981 count deprived him of his right to have a jury resolve those issues common to both the section 1981 and the Title VII claims. Therefore, Mr. Hussein urges that this court not only reverse the district court's decision to dismiss the section 1981 claim, but also to vacate the

---

ferred from the pleadings that plaintiff was complaining that he was the object of discrimination because he " 'belongs to a group that is distinct from "white citizens" as a matter of race or color.' " *Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 418 (7th Cir.1986) (quoting *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir.1984)). The portion of Mr. Hussein's deposition testimony read into the record the morning before trial, also clearly indicates that, from the start of the litigation, he considered the discrimination racially-motivated. *See* note 2, *supra.* This is not a case in which a plaintiff has unexpectedly introduced a legal claim at the last moment. The original complaint contained a section 1981 count as well as a demand for a jury trial. It was not until approximately two months before trial that the legal issue was dismissed. Even then, the parties were aware that the plaintiff intended to file an amended complaint. In this case, the addition of a legal claim would not prejudice the defendants. Until shortly before trial, the case proceeded as though it would be tried to a jury. If necessary, a short delay in the trial date could have pre-

served the plaintiff's right to a jury trial and provided the defendant adequate time for preparation.

5. The defendant has argued that both the doctrines of res judicata and collateral estoppel should be applied to bar further litigation in this case. Res judicata is not appropriate in this case because the defendant does not seek to bar the same cause of action in a subsequent suit. In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979), the Supreme Court noted the distinction between res judicata and collateral estoppel: "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment of the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."

judgment on the Title VII count and to remand the case for trial on both claims. In addressing these contentions,[6] we must reconcile the values protected by Mr. Hussein's seventh amendment right to a jury trial, and the values embodied in the doctrine of collateral estoppel.

## A. *Plaintiff's Right to a Jury Trial*

■ The seventh amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII. The seventh amendment applies "to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974). "An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). In his amended complaint, Mr. Hussein sought both compensatory and punitive damages on his section 1981 count. R.28 at 6. He, therefore, was entitled to have a jury resolve the factual issues underlying his section 1981 claim. *See Lincoln v. Board of Regents*, 697 F.2d 928, 934 (11th Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983); *accord Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 928 (9th Cir.), *cert. denied*,

459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982); *Bibbs v. Jim Lynch Cadillac, Inc.*, 653 F.2d 316, 318 (8th Cir.1981); *Moore v. Sun Oil Co.*, 636 F.2d 154, 157 (6th Cir. 1980).

■ Joinder of legal and equitable claims did not alter Mr. Hussein's right to a jury trial. The Supreme Court has noted that, when a legal claim is joined with an equitable claim, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis*, 415 U.S. at 196 n. 11, 94 S.Ct. at 1009 n. 11. Therefore, it is clear that, had the district court not erroneously dismissed the section 1981 claim, Mr. Hussein would have had a right to have a jury resolve those factual issues underlying the 1981 count. Furthermore, had the section 1981 claim not been dismissed, the district court could not have considered the equitable count first. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). In *Beacon Theatres*, the Court concluded that the seventh amendment would, under normal circumstances, prohibit a district court from exercising its discretion to resolve equitable claims before legal claims joined in the same suit. *Id.* at 510, 79 S.Ct. at 956. "*Beacon Theatres* requires that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962). " '[O]nly under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now

---

**6.** Before turning to Oshkosh Truck's collateral estoppel argument, we must determine whether the district court's dismissal of the section 1981 claim was harmless error. Certainly, the section 1981 count need not be remanded for trial if the record establishes that, upon remand, the district court could not, as a matter of law, submit the case to the jury. *See Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 221–22 (5th Cir.1984); *Johnson v. Wolff's Clothiers, Inc.*, 663 F.2d 800, 804 (8th Cir.1981).

As this court has emphasized on numerous occasions, a motion for a directed verdict should be granted only where the evidence, together with all inferences that reasonably could be drawn from it, considered most strongly against the moving party, does not

create a jury question. A directed verdict in favor of a defendant, then, is proper only if reasonable people, viewing the facts most favorably to the plaintiff and disregarding conflicting unfavorable testimony, could not conclude that the plaintiff has made out a prima facie case. *Crowder v. Lash*, 687 F.2d 996, 1002 (7th Cir.1982) (citations omitted). The district court's findings, R.42, contain sufficient evidence of possible racial discrimination to prohibit the court from directing a verdict against the plaintiff. On this record, we cannot hold that no reasonable juror could have found racial discrimination by Oshkosh Truck. Therefore, the district court's error in dismissing the section 1981 count was not harmless.

anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'" *Id.* at 472–73, 82 S.Ct. at 896–97 (quoting *Beacon Theatres*, 359 U.S. at 510–11, 79 S.Ct. at 956–57).

Therefore, had it not committed legal error and dismissed the section 1981 claim, the district court would have been obliged to submit the legal claim under section 1981 to a jury. Moreover, in deciding whether to grant equitable relief under Title VII, the district court would have been prohibited from reconsidering any issues necessarily and actually decided by the jury. *See Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1421 (7th Cir.1986); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979); *see also Lincoln*, 697 F.2d at 934; *Heyman v. Kline*, 456 F.2d 123, 131 (2d Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972).

## B. *Collateral Estoppel*

Collateral estoppel is a "judicially developed doctrine," *United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984), which, when properly applied, can "relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Oshkosh Truck argues that, despite the prohibitions of the seventh amendment and the concerns noted in *Beacon Theatres*, the Supreme Court's holding in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), requires us to apply collateral estoppel in this case.

The issue in *Parklane Hosiery* was "whether a party who has had issues of fact adjudicated adversely to it in an equitable action may be collaterally estopped from relitigating the same issues before a jury in a subsequent legal action brought against it by a new party." *Id.* at 324, 99 S.Ct. at 648. The Supreme Court stated

that it had already held in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), that "an equitable determination can have collateral estoppel effect in a subsequent legal action and this estoppel does not violate the Seventh Amendment." *Id.* 439 U.S. at 335, 99 S.Ct. at 653. The Court found this principle implicit in the *Beacon Theatres* holding:

> It is thus clear that the Court in the *Beacon Theatres* case thought that if an issue common to both legal and equitable claims was first determined by a judge, relitigation of the issue before a jury might be foreclosed by res judicata or collateral estoppel. To avoid this result, the Court held that when legal and equitable claims are joined in the same action, the trial judge has only limited discretion in determining the sequence of trial and "that discretion ... must, wherever possible, be exercised to preserve jury trial."

*Id.* at 334, 99 S.Ct. at 653 (quoting *Beacon Theatres*, 359 U.S. at 510, 79 S.Ct. at 956).

In *Parklane*, the party against whom collateral estoppel was invoked had been a party in another action, an SEC suit brought in the district court in which a jury was not required. Judgment had already been issued in that proceeding and had been affirmed by the court of appeals. The Supreme Court held, *inter alia*, that this first judgment would have a preclusive effect on the later action, even though the second action could normally be tried to a jury. In discussing whether such an application of collateral estoppel would be fair to the party against whom it was invoked, the court wrote:

> It is true, of course, that the petitioners in the present action would be entitled to a jury trial of the issues bearing on whether the proxy statement was materially false and misleading had the SEC action never been brought—a matter to be discussed in Part II of this opinion. But the presence or absence of a jury as factfinder is basically neutral, quite unlike, for example, the necessity of defending the first lawsuit in an inconvenient forum.

439 U.S. at 332 n. 19, 99 S.Ct. at 652 n. 19. In short, *Parklane* established that "preclusion may not be defeated simply by showing that there was no right to trial by jury in the first action and that there is a constitutional right to trial by jury in the second action, no matter what anguish that may cause to those who believe in juries." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4465 at 600 (1981).

We believe that the present case presents a substantially different situation than that before the Supreme Court in *Parklane.* Here, there is no earlier valid judgment. Mr. Hussein brought a single action in the district court. The facts underlying Mr. Hussein's section 1981 claim also form the basis of his cause of action under Title VII. Under the Federal Rules of Civil Procedure, the plaintiff is allowed to join his legal claims under section 1981 and his equitable claims [7] under Title VII in a single lawsuit. *See* Fed.R.Civ.P. 18. Moreover, under the "same transaction" test employed in this circuit to define the scope of res judicata, if Mr. Hussein had not brought both claims in the same suit, a subsequent lawsuit would have been barred. *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir.1986). Therefore, Mr. Hussein had no real choice but to bring both his section 1981 and his Title VII claims in one complaint. Except for the error of the district court, he would have been able to obtain a jury determination of the facts underlying his discrimination complaint.

Under these circumstances, the policy concerns which govern the application of the doctrine of collateral estoppel certainly do not require its application here. "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery,* 439 U.S. at 326, 99 S.Ct. at 649. It is hardly "needless litigation" to reverse a judgment on the ground that the plaintiff was denied his right to a jury trial through no fault of his own solely because of the error of the trial court. It is inappropriate to apply collateral estoppel to preclude review of an issue on which the appellant could not have previously sought review. *See* Restatement (Second) of Judgments § 28(1) (1982). Unlike the situations in *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), and *Reed v. Allen,* 286 U.S. 191, 52 S.Ct. 532, 76 L.Ed.2d 1054 (1932), the judicial system is not being asked in this case to assume an additional burden because the litigant failed to exercise his right to appeal. Here, Mr. Hussein appealed the dismissal of his section 1981 claim as soon as he had the final judgment required by 28 U.S.C. § 1291.[8] The burden on judicial administration is no more than in other situations in which legal error is committed and a retrial required. The only judgment whose integrity is attacked is the Title VII portion of the judgment under review, a judgment whose validity is "infect[ed]" because it was "presented to the wrong trier of fact." *Bouchet v. National Urban League, Inc.,* 730 F.2d 799, 803 (D.C.Cir. 1984) (Scalia, J.). We cannot sanction an application of collateral estoppel which would permit findings made by a court in an equitable proceeding to bar further litigation of a legal issue that had been properly joined with the equitable issue when those findings were made only because the

---

**7.** Mr. Hussein's cause of action under Title VII is considered equitable and, therefore, he is not entitled to a jury trial on that claim. *See Grayson v. Wickes Corp.,* 607 F.2d 1194, 1196 (7th Cir.1979).

**8.** We need not decide whether, under any other circumstances, it would be necessary for a litigant to seek entry of judgment under Fed.R. Civ.P. 54(b). In this case, where there is complete factual congruity with respect to the claims under section 1981 and Title VII, such an

appeal would not be permitted. *See Federal Deposit Ins. Corp. v. Elefant,* 790 F.2d 661, 663–65 (7th Cir.1986); *see also Jack Walters & Sons Corp. v. Morton Bldg., Inc.,* 737 F.2d 698, 701–02 (7th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984); *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chem. Group, Inc.,* 725 F.2d 1140 (7th Cir.1984); *Minority Police Officers Ass'n v. City of South Bend,* 721 F.2d 197 (7th Cir.1983).

district court erroneously dismissed the plaintiff's legal claim. To permit such an application would allow the district court to accomplish by error what *Beacon Theatres* otherwise prohibits it from doing.

## C. *Title VII Claim*

For the reasons set forth in their separate opinions, Judge Posner and Judge Eschbach are of the view that the judgment with respect to the Title VII claim should not be vacated. Judge Ripple, for the reasons set forth in a separate statement, believes that this portion of the judgment should be vacated.

The district court's dismissal of the section 1981 claim is reversed. The case is remanded to the district court for proceedings consistent with this opinion.

It is so ordered.

ESCHBACH, Senior Circuit Judge, dissenting from the majority opinion and concurring in part in Judge Posner's separate opinion.

The majority opinion is well written and well reasoned and I regret that I must dissent. The majority has gone the last mile in solving the plaintiff's dilemma notwithstanding the fact that part of the plaintiff's problem was of his own making: the plaintiff waived his right to appeal on some of the issues the majority reaches today. While it is not as well settled as the majority seems to imply, I accept the majority's reasoning that section 1981 may reach a claim of racial discrimination implied within a claim for national origin discrimination. I simply do not believe that the plaintiff-appellant properly asked the court to reach the issue. Nor do I think that the plaintiff properly appealed the judgment on the Title VII claim.

I note first that Hussein expressly abandoned any appeal challenging the district court's dismissal of the original complaint. Thus the single issue before the court is the propriety of the district court's dismissal of the amended complaint. As the majority correctly notes, the district judge dismissed this "eve of trial" amendment to the complaint, which sought to proceed on a theory of racial discrimination while the original complaint had alleged only national origin discrimination. The majority analyzes in detail the comments of the district judge to conclude that he did not dismiss the amended complaint because it was untimely—which of course, it was. *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir.1983) (within trial court's discretion to deny leave to amend when proffered amendment merely restates same facts in new language or reasserts claim previously determined); *Darms v. McCulloch Oil*, 720 F.2d 490, 494 (8th Cir.1983) (denial of eve of trial amendment upheld); *see also Bohen v. City of East Chicago*, 799 F.2d 1180, 1184–85 (7th Cir.1986) (delay and prejudice allow trial court discretion to deny amendment). Without a detailed analysis, it is abundantly clear that the majority is correct that the district judge was of the opinion that section 1981 did not include within its scope a claim based on national origin discrimination. It is equally true that the district judge expressed surprise that the plaintiff had endeavored to amend the complaint in such a manner as to allege what the district judge apparently believed was a different basis of discrimination on the eve of trial. Thus the record reveals that the district court dismissed the amended complaint for two reasons. The first was his erroneous opinion regarding the scope of section 1981, and the second reason was that the amendment was not timely and introduced an element of surprise at the last minute.

The majority attempts to circumvent the surprise issue by referring to various words in the complaint and at plaintiff's deposition. I cannot read these remarks to convey fairly to defendant's counsel that a racial discrimination claim had been stated, especially after a specific ruling that it had not been. It is perfectly understandable that more discussion would exist in the record regarding the substantive ground for dismissal than the timeliness ground, for both counsel and the experienced trial judge may have considered the timeliness ground unchallengeable. The majority makes much of the district court's retrac-

tion of his statement that the amended complaint was "frivolous," but that retraction simply reflected courteous treatment of counsel; nothing suggests that it represents a reconsideration by the district judge of the order or the grounds for it. I would uphold the district judge's dismissal of the amended complaint because the district judge was well within his discretion when he dismissed the amended claim as untimely.

After the dismissal, the plaintiff Hussein proceeded to go to trial before the district judge on his Title VII claim, which the majority concedes is by itself not triable to a jury. The district court passed judgment on the Title VII claim and included findings of fact and conclusions of law. The findings on the Title VII claim are amply supported by the record and the appellant makes no effort to contend otherwise. The appellant has not raised as an issue in this appeal any error or deficiency in the findings, conclusions, or judgment of the district court on the Title VII judgment. Until he belatedly raised the issue in his reply brief the appellant offered absolutely no challenge to the validity of the Title VII judgment. In his reply brief appellant first suggested that if he were correct in bringing his section 1981 claim, the Seventh Amendment and its judicial gloss require that the Title VII judgment be vacated to avoid binding the later section 1981 jury trial in regard to the facts common to both claims. This claim came too late; we have repeatedly held that an issue raised for the first time in the reply brief is waived for the purposes of appeal. *E.g., Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926, 933 n. 8 (7th Cir.1986); *Shlay v. Montgomery,* 802 F.2d 918, 922 n. 2 (7th Cir.1986); *Christmas v. Sanders,* 759 F.2d 1284, 1292 (7th Cir.1985).

Since those fact findings stand and have not been attacked on any basis on appeal they should collaterally estop further trial of the section 1981 claim on issues of fact common to both claims that meet the Supreme Court's requirements for collateral estoppel. *E.g., Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 & n. 5, 99 S.Ct. 645, 649 & n. 5, 58 L.Ed.2d 552 (1979), *cited*

*supra* at n. 5 (noting elements of collateral estoppel); *see also United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984); *Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). The Court's definition applies here and the plaintiff at bar should be collaterally estopped on those factual issues necessarily and actually decided in the Title VII action. This does no injury to the Seventh Amendment, for all plaintiff would have had to do to justify the analysis reached by the majority would have been to challenge the Title VII judgment in a timely fashion in his appeal to this court.

While this analysis may appear to bring about a harsh result, we should not be reaching out to resolve issues we are not properly asked to solve on appeal. If the dismissal of the section 1981 claim and the resulting bench trial on the Title VII claim are a basis for setting aside the fact findings of the district judge on the Title VII claim, then the appellant should be required to say so. The appellant here had the full time legally allowed to appeal the Title VII claim but chose not to do so, with the result that the unappealed judgment should be considered a final and separate binding judgment from the section 1981 claim for the purpose of the application of collateral estoppel. If the appellant was satisfied to accept the findings of the district court on the Title VII claim, then the appellant is bound by them. It of course makes no difference that the appellant's belatedly raised claim has a constitutional component. A decision not to appeal a judgment on constitutional grounds is no less final than a decision not to appeal on any other grounds. Our repeated holdings that procedural defaults will result in the waiver of the issues improperly raised has put counsel in this circuit on notice that we will generally not address those issues. We should not make the case for the appellant. We should rely on the appellant to make his own case.

While I differ with the majority statement that the findings of the district court would support a verdict for the plaintiff, that really is not relevant to the issues

raised on appeal. The majority suggests that if the jury is not collaterally estopped it may find that the defendant discriminated against the plaintiff on the basis of his race. That may be true. But that does not in any way undercut my point that the Title VII judgment should stand and that the court's findings there should collaterally estop those issues from being retried in the new trial on the section 1981 claim.

I do not believe that trial judges should be placed in the straightjacket tailored for them by this majority opinion. The appellant explicitly waived any argument that the original dismissal of the complaint was erroneous. The district court's judgment that the amended complaint was untimely was within his discretion and should be upheld. The appellant did not in timely fashion attack the Title VII judgment. The use of any error on appeal to undermine and vacate the Title VII judgment was the responsibility of appellant's counsel. We should not discharge that responsibility for him. In this day of ever increasing pressure on the federal trial judges we should not shoulder the burden that is counsel's to carry.

While I do not agree with my brother Posner's separate opinion to the extent that it rejects collateral estoppel, I certainly agree with him to the extent that the Title VII judgment should be affirmed.

POSNER, Circuit Judge.

I agree with everything in Judge Ripple's opinion except the setting aside of the judgment for the defendant on the plaintiff's Title VII claim. I agree with Judge Eschbach that the judgment on Title VII should be affirmed, but not that the consequence of affirmance is to bar the plaintiff's section 1981 claim by virtue of the doctrine of collateral estoppel. There is thus a majority (though not the same majority) for (1) ordering a new trial on the section 1981 claim and (2) affirming the dismissal of the Title VII claim.

The district court dismissed the plaintiff's section 1981 claim on the erroneous ground that the statute protects only American Negroes, and his Title VII claim

on the ground that the trial showed that the defendant had not violated the plaintiff's rights under this statute. The plaintiff chose not to appeal the latter dismissal. The defendant in its appeal brief advanced an alternative ground to that adopted by the district court for upholding the dismissal of the section 1981 claim: that the findings made by the judge after the bench trial on the Title VII claim collaterally estop the plaintiff to prove that he was a victim of racial discrimination, thus rendering academic the question whether the district court erred in dismissing the section 1981 claim before trial. In his reply brief the plaintiff for the first time asked us to set aside the dismissal of his Title VII claim, as well as the dismissal of his section 1981 claim.

The plaintiff was entitled to urge rejection of the defendant's collateral estoppel argument. This ground was injected into the appeal by the defendant after the plaintiff filed his appeal brief. An appellant is not required to anticipate and rebut in his opening brief every possible ground for affirmance that the defendant might (or might not) raise. "The brief writer should never forget that the judges are reading the briefs in six cases in preparation for each day of oral argument. The writer must select what is important and deal only with that; all that is not necessary should be ruthlessly discarded. Except in unusually complicated cases, a brief that treats more than three or four matters runs a serious risk of becoming too diffused and giving the overall impression that no one claimed error can be very serious." Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit 42 (1986). It is enough if the appellant contests the grounds on which the district court actually decided the case against him. So it wasn't too late for the plaintiff, in his reply brief, to point out the fallacy of the defendant's argument for collateral estoppel.

But it was neither necessary nor proper (in view of the limited scope of his appeal) for the plaintiff to go further in his reply brief and ask us to set aside the Title VII

judgment. A reply brief is for replying, not for raising a new ground or, as in this case, challenging a part of the judgment that the appellant decided not to challenge in his opening brief. See 7th Cir. Rule 28(e); *Shlay v. Montgomery*, 802 F.2d 918, 922 n. 2 (7th Cir.1986). If we acceded to the request in the plaintiff's reply brief, the result would be to enable him not only to try his section 1981 claim unhampered by the findings made by the district court after the trial of the Title VII claim, but also to get a new trial of that claim even though in his opening brief he expressed no desire for such a trial. Since he can get all the relief he wants under section 1981, he has little or nothing to gain as a practical matter from obtaining a retrial on Title VII as well—which is no doubt why he did not ask in his opening brief for such a retrial. But in any event we must and do hold him to his waiver.

RIPPLE, Circuit Judge, dissenting in part.

I respectfully dissent from my brothers' decision not to vacate the judgment with respect to the Title VII claim.

As my brothers point out, Mr. Hussein first mentions this matter in his reply brief. Under usual circumstances, this court does not entertain an argument first made in a reply brief. *Shlay v. Montgomery*, 802 F.2d 918, 922 n. 2 (7th Cir.1986). This is not, however, the usual case. Mr. Hussein's request that we vacate the Title VII claim is not grounded in any intrinsic error in the adjudication of that claim; it is deriv-

ative of his argument that the section 1981 claim was erroneously dismissed. In his opening brief, Mr. Hussein set forth his sole assertion of error in the proceedings below—the dismissal of the section 1981 claim. Oshkosh Truck countered that the error could be rectified by using the Title VII judgment, through collateral estoppel, to cure any error with respect to the section 1981 claim. Under these circumstances, Mr. Hussein was quite within his rights to remind us in his reply brief that, if we agreed with his assertion that the section 1981 claim was improperly dismissed, we could not use the Title VII judgment as proposed by Oshkosh Truck. Rather, we had to fashion a remedy which would enforce fully the right to jury trial which he had been denied by the dismissal of his section 1981 claim.

Fashioning such a remedy—a duty which we would have even if Mr. Hussein had not reminded us of it—requires vacation of the Title VII claim. Had the section 1981 count not been erroneously dismissed, the jury's determination on that count could not have been disregarded when the court considered whether to grant equitable relief under Title VII. It is possible, on remand, that the jury may find that Oshkosh Truck discriminated against Mr. Hussein on the basis of his race. Such a determination would constitute not only a violation of section 1981 but also a violation of Title VII.[1] Thus, the erroneous dismissal of his section 1981 claim and the concomitant denial of a jury determination of the merits would, in the words of then-Judge Scalia in *Bouchet v. National Urban*

---

1. To the extent that Mr. Hussein's allegations of discrimination are based on alleged racial slurs of co-workers, it must be remembered that "a company certainly is not liable for every racial slur by a nonsupervisory member of its work force." *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1421 (7th Cir.1986). "But failure to take reasonable steps to prevent a barrage of racist acts, epithets, and threats can make an employer liable if management-level employees knew, or in the exercise of reasonable care should have known, about the campaign of harassment." *Id.*

> [An] employer who has reason to know that one of his employees is being harassed in the workplace by others on grounds of race, sex, religion, or national origin, and does nothing

about it, is blameworthy. He is unlikely to know or have reason to know of casual, isolated, and infrequent slurs; it is only when they are so egregious, numerous, and concentrated as to add up to a campaign of harassment that the employer will be culpable for failing to discover what is going on and to take remedial steps. Other grounds for the distinction between the isolated slur and the campaign of harassment are that, the more slurs there are, the more harm they will do to the victim and the more the employer can do about them. He can reduce the frequency of racial slurs markedly, even if not to zero—so long as their frequency is not close to zero to begin with.

*Id.* at 1422.

*League, Inc.,* 730 F.2d 799, 803 (D.C.Cir. 1984), "infect the disposition of [his] Title VII claim as well, since most if not all of its elements would have been presented to the wrong trier of fact." *See also Calnetics Corp. v. Volkswagen of America, Inc.,* 532 F.2d 674, 690 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); *Heyman v. Kline,* 456 F.2d 123, 131 (2d Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972).

It may well be true, as Judge Posner suggests, that Mr. Hussein can obtain all the relief he requests through his section 1981 claim. The court's failure to vacate the Title VII claim is still disturbing. This is the second time in the last several months that this circuit has exhibited a reluctance to implement traditional remedial devices for the protection of the constitutional right to a jury trial. *See First Nat'l Bank of Waukesha v. Warren,* 796 F.2d 999 (7th Cir.1986).

There is another reason why the court has an obligation to vacate the Title VII portion of the judgment. No matter what Mr. Hussein's wishes might be and no matter when he expressed them, this court has an independent institutional concern for, as Judge Lombard put it in *Heyman,* "the integrity of the judicial process." The judiciary, he wrote, has "a substantial concern in the consistent determination of any particular question." *Heyman,* 456 F.2d at 131. That concern, according to the *Heyman* court, was not dependent on the actions of the parties because "[w]ere [the court] to remand only the legal claims, [it] would create a situation ripe with the possibility of inconsistent determinations of the same question." *Id.; see also Calnetics Corp.,* 532 F.2d at 690 n. 25.