JACK BROWN AND RESORT DEVELOPERS INTERNATIONAL, LTD., APPELLANTS, v. FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, RECEIVER FOR STATE SAVINGS AND LOAN ASSOCIATION, CLOVIS, NEW MEXICO, RESPONDENT.

No. 18969

June 30, 1989                              777 P.2d 361

[Rehearing denied August 22, 1989]

410

*Ed Bernard,* Carson City; *Glen L. Houston,* Hobbs, New Mexico, for Appellants.

*Lionel Sawyer & Collins* and *Paul R. Hejmanowski* and *Linda Sue Mabry,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from the trial court's imposition of a constructive trust over funds in appellant's bank account and from the jury's verdict awarding RICO (Racketeering Influenced Corrupt Organization) damages. The judgment was the result of a four-and-one-half month long trial involving multiple defendants and numerous financial transactions.

On November 7, 1983, respondent Federal Savings and Loan Insurance Corporation (FSLIC) filed a lawsuit in its capacity as receiver for State Savings and Loan Association (State Savings), a New Mexico corporation. Soon thereafter, FSLIC filed a second amended complaint asserting nine causes of action against twelve defendants, including appellants Jack Brown (Brown) and Resort Developers International, Ltd. (RDIL). The complaint alleged that the defendants conspired to gain illegally control of State Savings and that the defendants participated in various wrongdoings including fraud, forgery, theft, misappropriation of funds, breach of contract, conversion and racketeering.[1] The complaint sought compensatory damages in excess of $27 million and punitive damages in excess of $10 million. It also sought equitable relief in the form of an injunction and the imposition of a constructive trust, and an equitable lien and declaratory judgment setting aside certain conveyances.

At the conclusion of the trial, the jury returned a special verdict on twenty-four questions submitted to it by the court. With relevance to this appeal, the jury awarded $100,000.00 in RICO damages against each appellant. The trial judge tripled the $100,000.00 award; and, additionally, he imposed a constructive trust on $1.3 million of RDIL's funds and awarded it to FSLIC.[2]

Brown and RDIL now appeal the judgments against them, alleging the following four points of error: (1) the trial court erred by denying appellants' motion to dismiss pursuant to NRCP 41(a)(1); (2) the trial judge refused to recuse himself, constituting prejudicial error; (3) the trial judge erred by imposing a constructive trust on RDIL's $1.3 million and awarding the funds to FSLIC; and (4) the trial judge erred by refusing to grant appellant's motion for judgment notwithstanding the verdict (JNOV) to strike down the jury's award of $100,000.00 in RICO damages to FSLIC. Based upon the third and fourth points of error raised above, we reverse the trial court's judgment.

---

[1]Generally, the alleged wrongdoing pertinent to this appeal revolved around the sale, at an inflated price, of solar notes from co-defendant Randolph Shipley (Shipley was eventually dismissed by the trial court) to co-defendants Joe Boyd/Credit Plan Corporation. Boyd then sold the solar notes to State Savings. $1.3 million of the money that Boyd received from State Savings for the solar notes transaction was paid by Boyd to appellant RDIL for the purchase of $1.7 million in timeshare contracts. The $1.3 million was traced to RDIL's account in Valley Bank of Nevada.

[2]In addition, FSLIC obtained awards against some of the other defendants below: FSLIC was awarded over $12 million against defendants W. W. Taylor and Southwest Mortgage Services Corporation, and over $23 million against defendants Boyd and Credit Plan Corporation. These judgments were not appealed:

### Motion to Dismiss Pursuant to NRCP 41(a)(1)

The trial court did not err by denying the motion made on appellants' behalf to dismiss pursuant to NRCP 41(a)(1). Appellants assert that the action below was barred by the two dismissal rule embodied in NRCP 41(a)(1). We do not agree. The record does not support appellants' contention that they have been twice dismissed from actions based upon or including the same claim.

The suit which appellants claim served as their first dismissal was filed by the FSLIC in the federal court in Missouri. Although that suit arose based upon the same facts which support the present case, appellants were not named as parties to that action. Since no liability could have accrued to appellants as a direct result of the Missouri action, we are not persuaded by appellants' assertion that the dismissal of that action served as a dismissal with regard to appellants. The record reveals that appellants have been dismissed but once, in the California action wherein appellants were named defendants. This single dismissal does not support adequately appellants' motion to dismiss pursuant to the two dismissal rule embodied in NRCP 41(a)(1), and, therefore, the trial judge properly denied appellants' motion to dismiss.

### Judicial Recusal

Appellants next assert that the trial judge erred by refusing to recuse himself because he was generally biased in favor of FSLIC and because the trial judge's daughter was employed as a summer law clerk at the firm representing FSLIC. We cannot agree.

Appellants failed to preserve properly this issue for appeal since appellants did not join in the motion for recusal which was brought below. Failure to comply timely with the requirements for seeking recusal provided in NRS 1.235(1) and (2) results in a waiver of the issue. State ex rel. Dep't Welfare v. District Ct., 85 Nev. 642, 646, 462 P.2d 37, 39-40 (1969); A Minor v. State, 86 Nev. 691, 694, 475 P.2d 11, 13 (1970).

Furthermore, the motion for recusal which was brought by other co-defendants during the proceedings below was already considered and denied. We see no reason to upset that ruling. The record reveals that provisions had been made by FSLIC's counsel to screen the trial judge's daughter from any matters before, or likely to come before, her father. Under such circumstances there was no need to disqualify the trial judge. *See* United States ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456 (5th Cir. 1977), *cert. denied,* 434 U.S. 1035 (1978) (Fifth Circuit refused to disqualify trial judge where judge's son was an associate at a firm represent-

ing a party before that judge, but son had not worked on the case).

## Constructive Trust

Appellants assert that the trial judge erred when he "circumvented" the jury verdict by awarding equitable relief in the form of a constructive trust upon appellants' funds in the amount of $1.3 million, to be held in favor of FSLIC. The equitable relief was granted following these events:

At the close of trial, the jury was instructed on the subjects of constructive trust and bona fide purchaser, vicarious responsibility, conspiracy, agency, alter ego and fraud. The jury returned special verdicts in which it found specifically that appellants did not commit intentional fraud, negligent misrepresentation, nor conspiracy, and found further that FSLIC did not prove its claims for money had and received, but that both Brown and RDIL engaged in racketeering activities which proximately caused damage to State Savings. The jury found Brown and RDIL each liable for $100,000.00 in damages, excluding punitive damages, due to the racketeering activities.

Eight days after the jury verdict FSLIC filed a motion for equitable relief. FSLIC sought a constructive trust over $1.3 million in RDIL's account at Valley Bank. FSLIC's theory in support of the constructive trust was that co-defendant Boyd (not a party to this appeal) was the alter ego of RDIL, and that through Boyd, RDIL had knowledge of State Savings' insolvency at the time certain funds were conveyed, thus giving rise to a fraudulent conveyance and providing the basis upon which to impose a constructive trust over certain money which was traced to RDIL's bank account. FSLIC's motion for equitable relief was opposed by appellants on the bases that the alter ego theory was not supported by the evidence adduced at trial and that there was no evidence presented that Brown or RDIL had knowledge that the notes were sold to State Savings for less than fair consideration. The trial judge granted the constructive trust as requested by FSLIC based upon the conclusion that appellants did not acquire the $1.3 million as bona fide purchasers for value without knowledge. We hold that the trial court's judgment is improper because it conflicts with the jury's decision on the issue of imputed knowledge.

NRS Chapter 112 requires the following criteria to be met before a creditor can have a fraudulent conveyance set aside: (1) the conveyance must be made by a person who is insolvent or who will be rendered insolvent by it; (2) there was not fair consideration for the conveyance; and (3) the purchaser was not a

bona fide purchaser for value without notice of the fraud at the time of the purchase.

It is undisputed that the $1.3 million in RDIL's account has its origin in the solar note transaction between Boyd/Credit Plan and State Savings. It is also undisputed that State Savings was insolvent at the time it conveyed the solar note funds to Boyd. Additionally, the record contains ample evidence to support a finding that the conveyances of the solar notes from co-defendants Boyd/Credit Plan to State Savings were without fair consideration. Accordingly, the first two prerequisites required by NRS Chapter 112 for imposing a constructive trust have been satisfied. At issue then is the third criterion: whether RDIL was a bona fide purchaser for value without notice of the alleged fraud at the time of the purchase.

We are of the opinion that the trial judge's finding that RDIL was not a bona fide purchaser without notice of the fraud at the time of the purchase is precluded by the jury's special verdict. The record reflects that at trial FSLIC vigorously argued the theory that RDIL had imputed knowledge of the alleged fraud through Boyd and that the jury rejected that theory. FSLIC specifically argued that Boyd was a "control person" over RDIL, that RDIL was Boyd's alter ego, that Boyd's knowledge should be imputed to RDIL and that a constructive trust should be placed over the $1.3 million in RDIL's bank account. However, the jury's verdict, finding that RDIL was not liable on the claims of fraud, misrepresentation, conspiracy, and money had and received reveals that the jury rejected all of FSLIC's theories of imputed knowledge.

When "deciding whether to grant equitable relief . . ., the district court [is] prohibited from reconsidering any issues necessarily and actually decided by the jury." Hussein v. Oshkosh Motor Truck Co., 816 F.2d 348, 355 (7th Cir. 1987). Thus, the jury's rejection of FSLIC's proposed theories imputing knowledge from Boyd to RDIL precludes the trial judge from incorporating the theory of imputed knowledge into his equitable judgment.

The $1.3 million at issue was money paid by Boyd to RDIL for the purchase of timeshare contracts valued at $1.7 million. On its face, it appears that the transaction between Boyd and RDIL constituted a bona fide purchase for value. Knowledge that the solar note conveyance between Boyd and State Savings was fraudulent must then be imputed to RDIL in order to impose properly a constructive trust over the funds traced from that transaction. The jury's verdict precludes the trial judge from

finding that Boyd was an alter ego of RDIL or that Boyd's knowledge was somehow imputed to RDIL since the jury necessarily rejected those theories when considering whether RDIL was liable under several of the other causes of action alleged in the complaint. Absent the ability to impute Boyd's knowledge of the solar note fraud to RDIL, RDIL stands in the position of a bona fide purchaser for value, and the constructive trust cannot properly be placed over RDIL's receipts from the sale of the timeshare contracts to Boyd.

Our review of the record does not reveal adequate evidentiary support for any theory, nor has FSLIC suggested to this court any plausible theory, other than imputed knowledge, by which the trial judge could have decided that RDIL was not a bona fide purchaser for value taking without knowledge of the alleged fraud. Accordingly, the trial judge's equitable imposition of the constructive trust is erroneous, since it is in direct conflict with the jury's verdict. We, therefore, reverse the trial court's equitable judgment and order that the constructive trust which was placed over RDIL's $1.3 million be removed.

### RICO Award

Finally, we hold that the trial judge erred in denying appellants' motion for judgment notwithstanding the verdict (JNOV) because the jury verdict awarding $100,000.00 in RICO damages against Brown and RDIL was not supported by the evidence. In order to be liable for participating in "racketeering activity" one must engage

> in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents, if at least one of the incidents occurred after July 1, 1983, and the last of the incidents occurred within 5 years after a prior commission of a crime related to racketeering.

NRS 207.390. At trial, FSLIC suggested to the jury that the two racketeering-related crimes in which Brown and RDIL participated were forgery and perjury. *See* NRS 207.360(13) and (27). FSLIC asserts on appeal, for the first time, that the jury may have found also that Brown's alleged mutilation of a proposed trial exhibit by deleting certain information on ten RDIL transmittal documents constituted perjury or forgery.

The jury's special verdict found that both Brown and RDIL "engage[d] in racketeering activities prohibited by Nevada law

which proximately caused damage to State Savings." The amount of damages, excluding punitive damages, that the jury found "was sustained by State Savings and Loan Association as a proximate result of each such defendant's prohibited racketeering activities," was $100,000.00 for Brown and $100,000.00 for RDIL. Appellants moved for a JNOV or a new trial, but the motions were denied. Appellants now allege that the trial court erred by refusing to grant appellants' motion for JNOV.

A JNOV is "permissible only when all reasonable inferences from the facts presented to the jury favor the moving party." Skeeketski v. Bortoli, 86 Nev. 704, 706, 475 P.2d 675, 676 (1970). Appellants persuasively argue on appeal that there was not sufficient evidence presented at trial to support the jury verdict that State Savings sustained damages "as a proximate result of" the appellants' alleged racketeering activities. We agree. A review of the record confirms that the alleged perjury and forgery by Brown could not have proximately caused State Savings' damages.

With regard to the racketeering-related perjury, appellants admit that Brown testified in a deposition that original timeshare contracts had been in his possession when they actually were not. This perjury took place during a deposition for a lawsuit not involving State Savings, at a time subsequent to when State Savings had purchased its timeshare contracts. Thus, the perjury was not a proximate cause of State Savings damages and cannot support the jury's finding that State Savings' damages were a proximate result of the appellants' racketeering activities. The same analysis may be applied to discount FSLIC's assertion that the jury may have found that Brown's alleged altering of trial exhibits was a proximate cause of damage to State Savings.

Similarly, the alleged forgery occurred when Brown and his staff typed and signed duplicates of original timeshare contracts to show to an independent third party. The record reflects that the last timeshare contracts purchased by State Savings were purchased prior to the time that the forgery was committed. Thus, since State Savings did not purchase any timeshare contracts subsequent to the forgery it is unclear how State Savings was damaged by this event.

Rather than reflecting the amount of the damages sustained by State Savings "as a proximate result of [appellants'] prohibited racketeering activities," it appears that the jury's $100,000.00 awards under the RICO cause of action were an attempt by the jury to punish Brown for perceived wrongdoings involving the timeshare contracts. This conclusion is bolstered by the fact that although FSLIC argued to the jury that the proper amount of damages to be awarded under the RICO cause of action was $36

million, the jury awarded only $100,000.00 against each appellant. It is entirely unclear from what evidence the jury could have determined that State Savings was damaged in the amount of $100,000.00 by each of the appellants' alleged racketeering-related crimes. This tends to make the award appear to be a sort of fine, imposed by the jury, rather than an assessment of "actual damages sustained," as required under NRS 207.470(1).

The jury's verdict, finding that State Savings was damaged in the amount of $100,000.00 by each appellant "as a proximate result of each [appellants'] prohibited racketeering activities" is not supported by the reasonable inferences which may be drawn from the facts surrounding the alleged instances of perjury and forgery committed by Brown. The trial judge therefore erred by denying appellants' motion for JNOV. We now reverse the trial court's award of treble RICO damages in the amount of $300,000.00 against Brown and RDIL.

By reversing the trial court's judgment, we are not condoning some rather clearly underhanded activities which contributed to State Savings insolvency. Rather, we are ruling that, as a matter of law, the judgments against appellants Brown and RDIL cannot be affirmed. The record below does not support these judgments. We, therefore, dissolve the constructive trust upon RDIL's $1.3 million and set aside the jury's award of RICO damages.