Vivian VOLK, Plaintiff–Appellant,

v.

Gregory COLER, Jessie Hairston, Marty Lohman, Jesse Viers, James Tapen, Thomas Ward, and the State of Illinois Department of Children and Family Services, Defendants–Appellees.

No. 86–2518.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1987.

Decided May 2, 1988.

Patricia C. Benassi, Bennassi & Benassi, P.C., Peoria, Ill., for plaintiff-appellant.

Valeria J. Peiler, Office of Atty. Gen., Chicago, Ill., for defendants-appellees.

Before CUDAHY and MANION, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge:

Vivian Volk, an alleged victim of sexual harassment, sex discrimination and retaliation in her employment with the Illinois Department of Children and Family Services ("DCFS"), brings this appeal following a separate bench trial (Title VII claims) and jury trial (other claims). Volk initially brought claims under: (1) 42 U.S.C. § 1983 (sex discrimination and sexual harassment), 42 U.S.C. § 1985(3) (conspiracy to retaliate against her opposition to alleged sex discrimination, and retaliation in furtherance of that conspiracy), the due process clause of the fourteenth amendment (unfair grievance proceedings) and the first amendment [1] (violation of the right to oppose alleged sex discrimination and sexual harassment) against defendants George Coler, Jessie Hairston, Marty Lohman, Jesse Viers, James Tapen and Thomas Ward, in their official and individual capacities, (hereinafter, collectively referred to as the "individual defendants"); and (2) Title VII (sex discrimination, sexual harassment,

---

[*] Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Volk's claims under the first amendment are actually claims under the fourteenth amendment through the doctrine of incorporation. For distinction, however, we will refer to these claims as first amendment claims.

conspiracy to retaliate and retaliation) (42 U.S.C. § 2000e *et seq.*) against the DCFS.[2] The individual defendants were all DCFS supervisory employees.

After all the evidence was presented, but before submitting the plaintiff's claims to the jury, the district court directed a verdict for defendants Coler and Hairston on all claims, and for defendants Tapen, Lohman, Ward and Viers on the §§ 1983 and 1985(3) and due process claims. The district court entered judgment for the DCFS on all of Volk's Title VII claims. *See Volk v. Coler, et al.*, 638 F.Supp. 1540 (C.D.Ill. 1986) (directed verdicts); *Volk v. Coler, et al.*, 638 F.Supp. 1555 (C.D.Ill.1986) (Title VII). Volk's first amendment claims were submitted to the jury and a verdict was entered against defendants Tapen, Lohman, and Ward, but not Viers, in the amount of $35,000 in compensatory damages and $30,000 against Tapen and $10,000 against Ward in punitive damages. Volk appeals the directed verdicts and Title VII judgment. The defendants' cross-appeal has been dismissed pursuant to Circuit Rule 3(b).

We find that substantial evidence does not support any of Volk's claims against defendants Coler, Hairston and Viers and we therefore affirm the district court's directed verdicts with respect to all claims against them. We also find that Volk had no protected property interest in continued employment or placement at a specific DCFS office while employed by the DCFS and we therefore affirm the district court's directed verdicts with respect to her due process claims. We find that substantial evidence exists as to Volk's § 1985(3) conspiracy claims against defendants Tapen, Lohman and Ward and we reverse the district court's directed verdicts with respect

to Volk's § 1985(3) claims against these defendants. However, because Volk has already been compensated for all of the acts giving rise to her § 1985(3) conspiracy claims, we do not remand for a new trial with respect to these claims. Finally, we find that substantial evidence exists as to Volk's § 1983 sex discrimination and sexual harassment claims against defendants Tapen, Ward and Lohman and we therefore reverse the district court's directed verdicts with respect to these claims. Volk has already been compensated for all the acts occurring after January 9, 1980 which gave rise to her § 1983 claims. Such acts of alleged sex discrimination and sexual harassment were only committed by Tapen and Hairston, and we have affirmed the directed verdicts in favor of Hairston. Accordingly, we remand for a new trial only with respect to her § 1983 claims against Tapen for acts which occurred before January 9, 1980. Evidence of Tapen's acts which occurred after January 9, 1980 are relevant and admissible to establish a pattern and practice of harassment and discrimination but damages on remand are limited to pre–January 9, 1980 acts.

With respect to Volk's Title VII retaliation claims against the DCFS for denying her promotions in violation of her first amendment rights, which the district court dismissed prior to the jury's verdict against Tapen, Lohman and Ward, the district court was bound on the retaliation aspect of her Title VII claims by the jury's verdict with respect to acts occurring after January 9, 1980. That verdict was not set aside by the district court and the appeal with respect thereto was dismissed by the defendants. A judgment in the amount of $35,000, the amount awarded against Tapen, Lohman and Ward, representing back

---

**2.** Plaintiffs Amended Complaint ¶ 27 alleges the following:

> Plaintiff has been subjected, because of the above recited acts, to the deprivation by Defendants under color of law and of the customs and usages of the State of Illinois of rights, privileges and immunities secured to her by the Constitution and laws of the United States and, particularly, her rights of association and speech guaranteed under the First Amendment, her rights to due process and

> equal protection of laws guaranteed by the Fourteenth Amendment, including her right to be free from retaliation for opposing alleged acts of discrimination and other unlawful or improper acts of Defendants; her right to be free from sex discrimination in regard to hire, tenure and terms and conditions of employment guaranteed under Title VII of the Civil Rights Act of 1964; and her right to be free from retaliation for opposing said acts of unlawful sex discrimination.

pay, should have been entered against the DCFS. Punitive damages are not recoverable under Title VII. Accordingly, we reverse that portion of the district court's judgment for the DCFS which dismissed Volk's Title VII retaliation claims and direct the district court to enter a judgment against the DCFS in the amount of $35,000, for which it and defendants Tapen, Ward and Lohman are jointly and severally liable.

With respect to acts prior to January 9, 1980, the district court will be bound under Title VII by any jury verdict on the retrial of Tapen for acts before that date, unless the court sets the verdict aside. An appropriate judgment for or against the DCFS should be entered on the jury's verdict.

The district court would have been bound on Volk's other Title VII claims against the DCFS, sex discrimination and sexual harassment, by a jury's verdict on her § 1983 sex discrimination and sexual harassment claims against the individual DCFS employees Tapen, Lohman and Ward which the district court erroneously dismissed. We have reversed the dismissal of those claims by the district court against the individual defendants. We have not, however, ordered a new trial on those claims because Volk has already been compensated in the jury's verdict for the post-January 9, 1980 acts of the individual defendants. Similarly, while we reverse the judgment dismissing Volk's Title VII claims of sex discrimination and sexual harassment for post-January 9, 1980 acts against the DCFS, no further award of damages against the DCFS or equitable relief is necessary or appropriate.

## I.

### FACTS

Volk began working as a child abuse outreach worker in November, 1978 for the Covenant Counseling Service ("Covenant"), a branch of Covenant Children's Home in Princeton, Illinois. Volk was assigned to work in the DCFS' Ottawa Field Office following a grant received by Covenant and pursuant to a contract between the DCFS and Covenant. Tapen was the Team Leader of the DCFS' Ottawa Field Office and Volk's direct supervisor at Ottawa, managing her daily work. Volk's allegations focus on Tapen's actions allegedly conducted with the knowledge and approval of the other individual defendants.

### Evidence of Alleged Sexual Harassment

Volk contends that her professional relationship with Tapen was initially satisfactory but deteriorated when she rejected his numerous sexual advances, suggestive displays and crude remarks. Volk alleges that, although she was married and he knew it, Tapen began persistently inviting her out socially after work, which she declined. Volk claims that Tapen touched her in many overtly sexual and offensive ways, made several explicit sexual gestures before her, and frequently called her "hon," "honey," "babe" or "tiger."

Volk alleges that at a DCFS social function in March, 1979, Tapen made several sexually offensive advances toward her. Volk objected and said, "Tapen, I'm not going to mess with you." Tapen suggested that Volk and her co-worker Mary Wegrzyn were "queer" and later told Wegrzyn that "if it wasn't for you filling her with the women's lib ..., she'd be staying at home with her old man where she belongs."[3]

According to Volk, later that week, and a few days after Volk left her husband, Tapen called Volk into his office and complained that she and Wegrzyn were spending too much time together and ignoring other workers. Tapen indicated, however, that Volk was working satisfactorily and none of her co-workers had complained about her work. Volk then asked what she should be doing differently. According to

---

**3.** The record below contains numerous remarks allegedly made by Tapen to Volk and descriptions of several sexual gestures allegedly made by Tapen in front of Volk and other women. We have deleted particularly offensive portions of these remarks and descriptions from our opinion. We recognize, however, that such statements and gestures contributed to the overall environment to which Volk was allegedly subjected and their omission from our opinion in no way reduces their significance.

Volk, Tapen then leaned back in his chair, slid way down, ..., smiled and said, "I'm just telling you to be nicer to everybody."

Volk did not respond favorably to Tapen's suggestions. According to Volk, Tapen thereafter reacted in an abrupt and cold manner towards her, and ignored his responsibilities regarding her cases. Tapen repeatedly called Volk's work "... women's lib...."

Volk contends that Tapen engaged in similar acts of alleged sexual harassment against three other Covenant employees: Kathy Thorne, Alice Fitzgerald and Wegrzyn. Tapen allegedly touched Thorne in offensive manners, called her "hon," "honey," or "babe," and, after she objected, verbally abused her. In one instance, Tapen said to a male employee, Henry Over, in Thorne's presence, "See, I told you she was a ..., and the reason she's a ... is because she doesn't have a man." Thorne was later transferred to Covenant's Princeton office. Volk alleges that Tapen engaged in the same sexual gestures while sitting in front of Fitzgerald that he had in front of her. Volk further contends that Tapen made several sexual gestures towards Wegrzyn, called her "honey," "babe" and "tiger" and, after she objected, said "You don't have to be so ... about it." Tapen allegedly then became cold, angry, hostile, critical of Wegrzyn's work and interfered with her cases. In addition, Volk maintains that Tapen made numerous degrading remarks about several other DCFS female employees and offensively touched other women working there.

*Evidence of Alleged Sex Discrimination and Retaliation and Grievance Proceedings*

Volk produced substantial evidence as follows that Tapen prevented her from advancing professionally at the DCFS. In light of the district court's directed verdicts, this evidence must be weighed in Volk's favor. *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1213 (7th Cir.1985).

In April, 1979, Tapen refused to call the Department of Personnel to correct an error and confirm that Volk earned an "A" on a test for the position of Social Worker I. As a result, Volk's name was not on the eligibility list and Wally Kuhn, a male, was hired for an available position in the Ottawa office.

Volk took the test over and again received an "A". Volk applied for another available Social Worker I position in December, 1979. On January 2 and 3, 1980, Tapen interviewed Volk and questioned her on business and *nonbusiness* issues. Tapen told Volk that she was performing well. However, the position was offered to Eileen Fane, a trainee at Ottawa who was then ineligible to transfer because she had not completed six months training. Tapen admitted to Volk that he was using aspects of her personal life against her application.

Tapen consulted with Hairston, a DCFS Peoria Regional Administrator, before hiring the trainee.[4] Hairston approved Tapen's choice. Wegrzyn later advised Hairston of Tapen's alleged sexual advances toward Volk. Hairston, however, maintained his approval of Tapen's hiring selection.

On January 9, 1980, Volk filed a written grievance, protesting Tapen's interview questioning and refusal to hire her, claiming that his actions were discriminatory and in violation of the DCFS Department of Personnel Rules.[5] This date is significant in that it marks the point after which

**4.** Defendant Hairston was the Peoria Regional Administrator, supervising both defendants Tapen and Lohman. She became ill in March, 1980 and defendant Ward assumed her duties until May, 1980, after which both Hairston and Ward shared the responsibilities until Hairston resigned in August or September, 1980.

**5.** The following State of Illinois Department of Personnel Rules (effective September 1, 1978) are relevant:

Rule 2–790: *PROHIBITION OF DISCRIMINATION:* Discrimination against any person in recruitment, examination, appointment, training, promotion, retention, or any other personnel transaction, because of religion, race, national origin, sex, age or any other non-merit factor is prohibited except where such may be a bona fide job qualification. Any applicant or employee who feels adversely affected in employment because of such discrimination shall have resort to the griev-

Volk's first amendment claims and claims for retaliation are implicated. Lohman, a DCFS Field Supervisor in Peoria and Tapen's supervisor at that time, was present when Volk presented her first grievance to Tapen. Tapen denied Volk's grievance and submitted it to Hairston. The grievance was reviewed at the regional level by Hairston, Viers, a DCFS Labor Relations Specialist assigned to handle Volk's grievances, Lohman, and John Henderson, a DCFS Labor Relations Administrator. Henderson concluded that Tapen's actions were improper and Volk's allegations would be "hard to defend" if true.

Sometime in January, 1980, DCFS supervisors discussed transferring Volk to another office if Ottawa received a second grant. She would not be transferred, however, before July, 1980, when the first grant expired.

Volk presented her complaint orally to Viers, Lohman and Hairston. In their presence, Tapen admitted advising Volk following the job interview that she would be rejected because she did not attend a Christmas party held by other workers and her roommate failed to invite other workers to their home. Viers later submitted a written report, summarizing this meeting, to Hairston, Lohman and Henderson, who worked under Coler, the DCFS Director.

On January 31, 1980, Jan van Blommesteyn, DCFS' Chief of Labor Relations who reported under Coler, sent Hairston a memo asking that Viers speak to Tapen because "the grievance as written is something we should all be very concerned about." Volk also sent a copy of her grievance to Coler, requesting that he take corrective action.

On February 11, 1980, the trainee selected by Tapen withdrew her application, leaving Volk as the only remaining applicant. Nevertheless, Tapen refused to select Volk and looked for other potential applicants.[6] These decisions were approved by Coler, Hairston, Lohman and Viers. Hairston, pursuant to Viers' recommendation and Lohman's approval, denied Volk's grievance.

With the assistance of counsel, Volk appealed her grievance to Coler. On March 10, 1980, Volk's counsel discussed the grievance with Henderson and indicated that Volk would file sex discrimination charges with the Fair Employment Practices Commission and the Equal Employment Opportunity Commission if Tapen continued to deny her employment. Henderson later advised Hairston in a memo that "because of the sensitive nature of this grievance, all documentation available is critical in supporting management's decision not to select this candidate." This memo was distributed to Tapen and Gordon Johnson, DCFS' legal counsel and Deputy Director who reported directly to Coler. Lohman and Viers were also notified about Volk's stance. Tapen was told that Coler's office was investigating his actions.

On March 25, 1980, Tapen told Volk that she was being transferred from the Ottawa field office. The grant funding Volk's work at Ottawa, however, was not due to expire until July 1, 1980. Moreover, Tapen was then actively seeking other staff for the Ottawa office. The decision to transfer Volk was approved by Lohman and Ward, Hairston's interim successor as Peoria Regional Administrator, and Volk's cases were taken away from her.

On March 27, 1980, a third level grievance hearing was held by Tapen, Viers, Lohman and Henderson. At this meeting, Tapen admitted that Volk was a good

ance procedure hereunder and may be joined in such procedure by the Affirmative Action Director or designee where necessary or appropriate.

Rule 3–10: *DEFINITION OF A GRIEVANCE:* A grievance is any question between an employee and his employing agency, or applicant as covered in Rule 2–790, concerning the meaning, interpretation or application of these Rules, or the Personnel Code or any issue concerning terms or conditions of State employment which directly affect the grievant in the performance of his official duties.

**6.** The district court noted that the Department of Personnel Rules state that in the event that less than three persons apply for a position, more applications may be sought. *Volk,* 638 F.Supp. at 1563. These rules, however, apparently do not state that more applications must be solicited.

worker and qualified for the Social Worker I position. However, he defended his refusal to hire Volk by stating that she created dissension among the staff, used loud profanity and was aggressive and overbearing. This was Tapen's first assertion of any business-related concerns. When Volk's counsel raised allegations of sexual harassment and retaliation, Tapen became hostile and threatened that Volk would never again work in the Ottawa field office. Henderson made a written summary of this meeting and sent copies to Coler, Lohman and Ward. On April 1, 1980, Tapen told Volk, "There's going to be one hell of a fight and things are going to get pretty nasty before I'm through." Volk was transferred on April 3, 1980 to the DCFS Princeton office.

Volk's counsel protested to Coler and demanded that Volk's transfer be withdrawn and her qualifications for any position be evaluated by someone other than Tapen. On April 3, 1980, Blommesteyn advised Coler in a memorandum that if Volk's account was true, Tapen's threats and retaliatory action against her "demonstrat[ed] improper conduct and possibly unprofessional behavior.... [t]he fact we have a potential sexual discrimination suit being considered causes serious concern on my part." Blommesteyn later wrote to Coler, "Because of the sensitive nature of these two grievances, I am sending the proposed third level response to your office for review." On April 10, 1980, Coler denied Volk's grievance. In a letter to Volk's counsel, Coler stated, "I have reviewed the attached summary of the third level meeting, and I concur with the recommendations therein."

In late April or early May, Volk was again interviewed by Tapen for the Social Worker I position still available. Tapen again refused to hire her and hired a male applicant who received a "C" on the exam and had no experience with DCFS or a similar agency. In comparison, Volk earned an "A" on the exam and had accumulated 17 months experience at the Otta-

wa office. Viers, Lohman and Ward approved Tapen's action.

In May, 1980, Volk submitted another grievance, protesting her removal from the Ottawa office in April, 1980, and charging Tapen with sex discrimination and retaliation. Tapen refused to discuss the grievance at the first level, Ward denied it at the second level, Coler did not respond at the third level and successfully opposed Volk's right to a fourth level hearing.

In July, 1980, Volk was hired as a Social Worker II in another DCFS office by a supervisor unfamiliar with her claims in Ottawa. In August, 1980, a hearing was scheduled before the DCFS Department of Personnel. Coler cancelled the hearing and Volk subsequently filed her action in the district court.[7] Volk contends that she was then subjected to further harassment related to her Ottawa experience. She quit her job in August, 1983.

## II.

### STANDARD OF REVIEW

The standard for reviewing a trial court's grant of a directed verdict is the same standard as that employed by the trial court. We must conduct a *de novo* review, *Webb v. City of Chester, Illinois*, 813 F.2d 824, 827 (7th Cir.1987), and determine "whether the evidence presented, combined with all the reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed." *Tice, supra*, at 1213. *See also Vieau v. Japax, Inc.*, 823 F.2d 1510, 1515 (Fed.Cir.1987), *quoting, Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546 (Fed.Cir.1983) (In reviewing a motion for a directed verdict or judgment notwithstanding the verdict, "[i]f, ... the court is convinced upon the record before the jury that reasonable persons could not reach or could not have reached a verdict

---

**7.** Before filing her suit in the district court, Volk satisfied the jurisdictional requirements under Title VII, 42 U.S.C. § 2000e.

for the nonmover, it should grant the motion for directed verdict or JNOV.").

## III.

### ALLEGED DUE PROCESS VIOLATIONS

■ Volk contends that her procedural due process rights under the fourteenth amendment were violated by the defendants' alleged arbitrary handling of her grievances. Under the due process clause, "certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985). Volk's due process claims can succeed, however, only if she proves that she had a "property right in continued employment" (she was rejected for the Social Worker I positions) or in employment at a particular office (she was transferred) and that the grievance proceedings did not comport with due process. *Id.* at 538, 105 S.Ct. at 1491.[8] Only if Volk had a property right must we decide if she received due process. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Volk seeks enforcement of the benefits and protections of the Illinois Department of Personnel Rules. Those rules prohibit discrimination based on sex or "any other non-merit factor [in] ... recruitment, examination, appointment, training, promotion, retention or any other personnel transaction,...." *See* note 5, *supra.* The rules also provide for grievance procedures through which a state employee can bring charges of employment discrimination.

These rules alone, however, do not create "property interests" as defined under the due process clause. The Illinois rules prescribe procedures. Volk's underlying claims brought through the grievance proceedings were based on the decisions to transfer her and not to promote her. She was not discharged and she had no right to continued employment or to employment at a particular office. Her "interests" in being promoted and in not being transferred were subject to the DCFS' ultimate discretion. Volk did not have a "legitimate claim of entitlement" to favorable employment decisions. *Roth, supra,* at 577, 92 S.Ct. at 2709. Without an underlying property interest in the *employment positions,* she cannot seek enforcement of the Illinois rules or procedures under the due process clause. *See Scott v. Village of Kewaskum,* 786 F.2d 338, 339–40 (7th Cir.1986); *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1081 (7th Cir.1987).

Volk does have a constitutionally protected right to be free from sex discrimination, sexual harassment and retaliation. The alleged acts which, according to Volk, were responsible for the unfavorable employment decisions, are cognizable under her first amendment, §§ 1983 and 1985(3) and Title VII claims. Her due process claims, however, must fail and we therefore affirm the district court's directed verdicts with respect to these claims.

## IV.

### LIABILITY UNDER § 1983

■ Liability under § 1983 requires proof that "(1) defendants acted under color of state law, (2) defendants' actions deprived plaintiff of her rights, privileges or immunities guaranteed by the Constitution, and (3) defendants' conduct proximately caused plaintiff's deprivation." *Webb, supra,* at 828 (citations omitted).[9] In addi-

---

**8.** Volk's due process claims only implicate property interests.

**9.** 42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected,

tion, Volk must prove that the defendants' discrimination was intentional. *Id.* Once Volk establishes a *prima facie* case of sex discrimination, the defendants must "articulate a legitimate nondiscriminatory reason for taking the action alleged by plaintiff to be discriminatory. If defendants do articulate such a reason, the burden [of production] shifts back to plaintiff to demonstrate that the proffered reason is merely a pretext for discrimination." *Id.* (citations omitted).

We recently established what constitutes sexual harassment and sex discrimination under § 1983 and the equal protection clause:

> Creating abusive conditions for female employees and not for male employees is discrimination. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (sexual harassment is sex discrimination for Title VII purposes). Forcing women and not men to work in an environment of sexual harassment is no different than forcing women to work in a dirtier or more hazardous environment than men simply because they are women. Such unjustified unequal treatment is exactly the type of behavior prohibited by the equal protection clause as interpreted in *Davis v. Passman,* 442 U.S. 228, 234–235, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979).

*Bohen v. City of East Chicago, Indiana,* 799 F.2d 1180, 1185–86 (7th Cir.1986). *See also Scott v. Sears, Roebuck & Co.,* 798 F.2d 210, 212–14 (7th Cir.1986).

Liability for sexual harassment amounting to sex discrimination under the equal protection clause has been found where one was subjected to "repeated crude sexual advances and suggestive comments ... despite plaintiff's explicit and consistent rejection," coupled with the victim being subjected to sexual assault at work and harassment of other employees acting to protect the sexual abuser, *see Skadegaard v. Farrell,* 578 F.Supp. 1209, 1212 (N.J. 1984), and where harassment included "(1)

embarrassing and belittling remarks in front of fellow officers; (2) repeated sexual advances; (3) interception of mail and phone messages; and (4) harassment of male police officers who requested to work with [the victim]." *Woerner v. Brzeczek,* 519 F.Supp. 517, 518 (N.D.Ill.1981).

All the individual defendants were supervisory employees of a state agency. The fact that they were acting under color of state law is not disputed. *See, Drollinger v. Milligan,* 552 F.2d 1220, 1226 (7th Cir. 1977).

### A.

### *Defendants Coler and Hairston*

Defendants Coler and Hairston are liable for any violation of Volk's rights if their acts or omissions constituted "a reckless disregard of [her] constitutional rights, or if the conduct causing the constitutional deprivation occurs at [their] direction or with [their] knowledge and consent." *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1983) (citations omitted). In other words, Volk must establish that Coler and Hairston "participated personally in any of the deprivations which form the basis for [her] damage claims, [or] ... that any of the challenged actions occurred at [their] direction or with [their] express consent." *Id.* at 1006.

The evidence produced by Volk was that Coler and Hairston were aware of Tapen's actions, Volk's grievances and other DCFS management personnel's warnings regarding the gravity of Volk's allegations and, notwithstanding, approved the decisions taken with respect to Volk's grievances and employment applications. As DCFS Director, Coler was aware of Volk's numerous allegations of sexual harassment and approved the decisions not to promote her. Coler also denied Volk a fourth level hearing with respect to her May, 1980 grievance and a subsequent hearing before the DCFS Department of Personnel. As DCFS regional administrator, Hairston approved

any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Tapen's decisions and was aware of Tapen's alleged sexual advances toward Volk.

Notwithstanding the evidence produced by Volk, the alleged acts of others did not occur at Coler's and Hairston's "direction or with [their] knowledge and consent." *Crowder, supra,* at 1005. An "affirmative link" does not exist between the actions of Coler and Hairston and the alleged equal protection and first amendment violations. *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985). As DCFS Director, Coler supervised over 2000 employees. Most of Volk's grievances were handled by the labor department, specifically by Bloomesteyn, Johnson and Henderson, in addition to defendants Tapen, Ward, Lohman and Viers. Hairston would have been more directly involved in Volk's case had she not been absent (due to an illness) during most of the time in question. In addition, both Coler and Hairston ensured that Volk's grievances were investigated.

We do not suggest that any employee in a supervisory capacity equal to that assumed by Coler or Hairston is, by virtue of that capacity, necessarily removed from liability for acts similar to those which occurred here. Indeed, three supervisors were found liable for Volk's first amendment claims. Hairston's personal involvement was affected by her absence. Coler's capacity as DCFS Director by its nature distanced him from the actions about which Volk complains. He did not act to diminish this distance. Viewing the evidence in a light most favorable to Volk, Coler's and Hairston's actions, although very close to the line at which liability attaches, are not sufficient to establish their liability. The personal involvement of Coler and Hairston with respect to Volk's § 1983 claims is equally lacking with respect to her § 1985(3) claims. We therefore affirm the district court's directed verdicts for defendants Coler and Hairston with respect to Volk's claims under §§ 1983 and 1985(3).

### B.

### Defendants Tapen, Lohman, Ward and Viers

■ With respect to defendants Tapen, Lohman, Ward and Viers, we note that the district court denied their motion for a directed verdict. The district court concluded that

each of these Defendants were more directly involved in the investigation and handling of Plaintiff's grievances. Further, there are facts which indicated that these officials became aware of Tapen's alleged conduct during the time Plaintiff was under consideration for the social worker position, and prior to the time acts of retaliation (such as Plaintiff's transfer) occurred. Thus, it is possible that the deprivations of Plaintiff's rights, if proven, could have occurred at the direction of these officials or with their express consent. *See, Soderbeck v. Burnett County, supra,* 752 F.2d [285] at 294 [7th Cir.1985], *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261.

638 F.Supp. at 1550.

We agree that the evidence, viewed in a light most favorable to Volk, could establish that Tapen, Lohman and Ward were sufficiently personally involved in the alleged violations of her rights. With respect to defendant Viers, however, the jury found that she was not liable under any of Volk's first amendment allegations. Damages were awarded against Tapen, Lohman and Ward, but the jury found in favor of Viers. Volk has not appealed this verdict. As noted below, Volk's first amendment claims involve the same operative facts as her § 1985(3) claims and post-January 9, 1980 § 1983 claims. Accordingly, the district court's directed verdicts in favor of Viers on Volk's §§ 1983 and 1985(3) claims are affirmed, on other grounds, and we must decide whether the district court erred in concluding that defendants Tapen, Lohman and Ward could not be liable for any of Volk's sex discrimination and sexual harassment claims under § 1983 as a matter of law.

The district court held and defendants Tapen, Lohman and Ward argue that Volk failed to establish equal protection violations under § 1983 because "no jury could conclude that Plaintiff was discriminated

against on the basis of her membership in the class of women.... For instance, no witness testified that Tapen treated women as a group differently from men...." 638 F.Supp. at 1554.[10] Instead, the district court held and the defendants contend that any unfavorable treatment of Volk was based solely on her *individual* traits.

Under the equal protection clause, however, Volk need not prove that an entire class was discriminated against.

An equal protection plaintiff therefore need not prove a discriminatory policy against an entire class; discrimination against the plaintiff because of her membership in the class is by itself enough.... Evidence of a pattern or practice of discrimination, however, is of course strong evidence supporting a plaintiff's claim that she herself has been the victim of discrimination.... To make this showing, it is not necessary to show that all women employees are sexually harassed. Harassment of the *plaintiff alone* because of her sex is enough.

*Bohen, supra,* at 1187 (citations omitted) (emphasis added).

The defendants additionally suggest that any action taken was defensible under our holding in *Huebschen v. Department of Health And Social Services,* 716 F.2d 1167 (7th Cir.1983). In *Huebschen,* no equal protection violation was found because the plaintiff's "gender was merely coincidental to [the defendant's] action." *Id.* at 1172. The district court below cited *Huebschen* as controlling authority. 638 F.Supp. at 1554.

The facts in *Huebschen,* however, are easily distinguishable from those in this case. There, an office "consensual romance" turned sour and the defendant's conduct demonstrated an animus towards her "former lover who had jilted her," rather than general discrimination against the victim because of his sex. 716 F.2d at

1172. In addition, the *Huebschen* court distinguished its case from the facts in *Woerner, supra. Woerner* involved "embarrassing and belittling remarks to the plaintiff female police officer, sexual advances made to her by a male defendant, and harassment of male officers seeking to work with her,...." *Id.* There is no dispute that Volk immediately and continually rejected Tapen's alleged sexual advances, suggestive displays and crude remarks. Volk's testimony depicts an abusive environment in which she was allegedly victimized against her will, not one in which a consensual romance disintegrated.

The defendants' argument misconstrues the protections afforded by the equal protection clause and incorrectly suggests that the law recognizes two classes of women: those women who are sexually offended by improper overtures and those who are either not offended or not subjected to them. Discrimination and harassment against an *individual* woman because of her sex is a violation of the equal protection clause. *Bohen, supra,* at 1187. Volk's sex is an immutable characteristic. Even if Tapen did not choose to offend all women with whom he had contact, the law does not require such uniform treatment. Moreover, Volk offered evidence of Tapen's allegedly abusive and discriminatory conduct towards other female employees, including Wegrzyn, Thorne and Fitzgerald.

Volk was highly qualified for the position of Social Worker I. Even Tapen admitted this. In fact, she was later selected for a higher position, Social Worker II, but at a different office. Volk was rejected at Ottawa based on non-merit reasons, as admitted by Tapen, and the position was offered to a mere trainee and eventually filled by a less-qualified male applicant.

We conclude that substantial evidence, viewed in a light most favorable to Volk,

---

**10.** All of Volk's non-Title VII claims were brought against all six individual defendants. Because we affirm the district court's directed verdicts in favor of defendants Coler and Hairston on all claims against them, and in favor of defendant Viers on Volk's §§ 1983 and 1985(3) claims, although not for the same reason as the district court, the remaining discussion will not include the fact that arguments raised by the other defendants were also raised by Coler, Hairston and Viers or that claims made by Volk against the other defendants were also alleged against Coler, Hairston and Viers.

supports her claims of sex discrimination and sexual harassment under § 1983 against defendants Tapen, Lohman and Ward and we therefore reverse the district court's directed verdicts with respect to these claims. As explained below, however, Volk has already been compensated for all the acts of alleged sex discrimination and sexual harassment which occurred after January 9, 1980 by the jury's retaliation verdict. Volk produced evidence of acts occurring before this period which only implicated Tapen and Hairston. We have already affirmed the directed verdicts in favor of Hairston on all claims. We therefore remand for a new trial only with respect to her § 1983 claims against Tapen for acts which occurred before January 9, 1980. Evidence of his acts which occurred after January 9, 1980, are relevant and admissible to establish a pattern and practice of discrimination and harassment. However, on remand, damages may only be awarded for pre-January 9, 1980 acts.

### V.

### LIABILITY UNDER § 1985(3)

■ Volk alleges that Tapen, Ward and Lohman conspired to retaliate against her (and discriminated against her in furtherance of the conspiracy) because of her opposition to alleged acts of discrimination. To succeed under § 1985(3), Volk must prove that a conspiracy existed "to deprive her of her rights to equal treatment with members of the opposite sex. She is not required to allege that the ... discriminatory treatment was class-wide in its application by defendants." *Skadegaard, supra,* at 1220.[11] *See also Quinones v. Szorc,* 771 F.2d 289 (7th Cir.1985).

■ § 1985(3) extends beyond conspiracies to discriminate against persons based on race to conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty. *Munson v. Friske,* 754 F.2d 683, 695 (7th Cir.1985),

*citing Murphy v. Mount Carmel High School,* 543 F.2d 1189, 1192 n. 1 (7th Cir. 1976). *See also Life Insurance Co. of North America v. Reichardt,* 591 F.2d 499, 505 (9th Cir.1979); *Marlowe v. Fisher Body,* 489 F.2d 1057, 1064–65 (6th Cir. 1973). *Cf. Grimes v. Smith,* 776 F.2d 1359, 1363–67 (7th Cir.1985) (§ 1985(3) does not cover alleged victims of nonracial political conspiracies).

The district court initially concluded that, under § 1985(3) (and § 1983), Volk was required to prove "class-based animus [but, that] no jury could conclude that [she] was discriminated against on the basis of her membership in the class of women.... For instance, no witness testified that Tapen treated women as a group differently than men." 638 F.Supp. at 1554. As discussed above, with reference to Volk's § 1983 claims, proving a violation of one's right to be free from sex discrimination and sexual harassment does not require proof of discrimination against an entire class of women (or men). Likewise, to succeed under § 1985(3), Volk need not prove that there was an agreement to discriminate against an entire class of women.

The district court also held that § 1985(3) does not apply to intra-entity conspiracies. 638 F.Supp. 1540, at 1554 n. 3. That is not an accurate reading of the law.

[T]he statutory requirement that "two or more persons ... conspire or go in disguise on the highway," is not satisfied by proof that a discriminatory business decision reflects the collective judgment of two or more executives of the same firm. We do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding. Agents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders from the Grand Dragon. But if the challenged conduct is essentially a single act of discrimination by a single

---

11. 42 U.S.C. § 1985(3) provides, in relevant part:
    If two or more persons in any state or Territory conspire ... for the purpose of depriving either directly or indirectly, any person or

class of persons of the equal protection of the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute the conspiracy contemplated by this statute. *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972).

■ It can be argued that the defendants acted within the scope of their supervisory authority despite allegedly acting in ways which would not further the DCFS' legitimate business concerns. *See Horn v. Duke Homes, Div. of Windsor Mobile Homes,* 755 F.2d 599, 605 (7th Cir.1985) (an employee acts within the scope of his authority when, while "exercis[ing his] supervisory power," he discriminates against another employee based on sex). Here, however, Volk alleged numerous acts undertaken by several defendants. *See Craft v. Board of Trustees,* 516 F.Supp. 1317, 1324 (N.D.Ill.1981), *aff'd,* 793 F.2d 140 (7th Cir. 1986) (plaintiff stated cause of action under § 1985(3) where the allegations concerning a conspiracy between a university's board of trustees and its employees include allegations accusing the defendants "of a series of discriminatory acts."); *An–Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137, 1166–67 (W.D.Mich.1980) ("It makes no sense to immunize illegal discriminatory activity merely because the activity arose in a corporate setting. Where two or more corporate officers by agreement commit different discriminatory acts against plaintiff, I believe a § 1985(3) violation has occurred."); *Rackin v. University of Pennsylvania,* 386 F.Supp. 992, 1005–06 (E.D.Pa.1974); *Coley v. M & M Mars, Inc.,* 461 F.Supp. 1073, 1076 (M.D.Ga.1978); *Dupree v. Hertz Corp.,* 419 F.Supp. 764, 766 (E.D.Pa.1976).

■ Volk presented evidence that Tapen, Lohman and Ward were aware of her grievances, reviewed them, and discussed among themselves their gravity and the need for documentation to possibly defend against them. Together, they rejected her for a position for which she was clearly qualified (compared to the pool of applicants) and approved her later transfer. Moreover, she also presented evidence of discrimination and harassment against several other female workers at DCFS. These other workers were allegedly subjected to further mistreatment following their protests. Indeed, one woman was subsequently transferred.

Tapen's proffered non-discriminatory reasons for not promoting Volk and later removing her were sufficiently rebutted. Tapen admitted that he refused to hire Volk based on improper factors. It was only later, during extended grievance proceedings, that Tapen suggested any business reasons for his refusal to hire Volk. There was substantial evidence that Volk and other women were subjected to an abusive work environment and that Volk was further victimized by Tapen, Lohman and Ward after she sought redress. A reasonable jury could find that defendants Tapen, Lohman and Ward conspired to retaliate against her, and, in furtherance of that conspiracy, discriminated against her. We therefore reverse the district court's directed verdicts with respect to Volk's claims under § 1985(3) against these defendants.

The jury was left with the "sole issue of whether any of the Defendants retaliated against the Plaintiff in response to her exercise of her First Amendment right to protest what she felt was unlawful discrimination." 638 F.Supp. at 1542. Volk voiced her opposition to alleged acts of discrimination beginning on January 9, 1980. Volk's claims under § 1985(3) allege a conspiracy to discriminate against her for opposing alleged acts of discrimination.[12] The § 1985(3) retaliation claims appear not to be gender-based but based on Volk's first amendment right. This was the defendants' alleged *motive* to retaliate. The *acts* underlying the § 1985(3) claims, how-

---

**12.** Plaintiff's Amended Complaint ¶ 28 alleges the following:

Plaintiff alleges that in doing the acts and things above complained, the Defendants herein named were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive her of rights guaranteed to Plaintiff under the constitution and the laws of the United States and, particularly, those hereinabove enumerated.

ever, in addition to the conspiracy (agreement) itself, are those alleged acts of sex discrimination and sexual harassment allegedly taken in furtherance of the conspiracy. These acts are the identical acts which a jury has reviewed with respect to Volk's first amendment claims.

■ Volk has already been awarded compensatory and punitive damages for her first amendment claims against Tapen, Lohman and Ward. The conspiracy itself does not give rise to further damages. *Reichardt v. Payne*, 396 F.Supp. 1010, 1019 (Cal.1975) ("In a civil rights conspiracy action, the damages flow from the overt acts in furtherance of the conspiracy, not from the existence of the conspiracy itself."), affirmed in part and remanded on other grounds, 591 F.2d 499 (9th Cir.1979). *See also Andree v. Ashland County*, 818 F.2d 1306, 1311 (7th Cir.1987). Volk may not receive two recoveries for the same alleged harm. Because all of the acts allegedly taken in furtherance of an alleged conspiracy against Volk have been reviewed by a jury, there is no reason for a second jury to decide whether a § 1985(3) conspiracy existed.[13]

Similarly, because the acts which comprise Volk's first amendment claims are also acts of alleged sex discrimination and sexual harassment, Volk has already been compensated for the injuries and acts occurring after January 9, 1980 which comprise her § 1983 claims. Volk may not receive two recoveries for the same alleged wrongs. Accordingly, as noted above, we remand for a new trial with respect to Volk's § 1983 claims only as to acts committed by Tapen before January 9, 1980.

## VI.

### VOLK'S CLAIMS UNDER TITLE VII AGAINST THE DCFS

Volk's first amendment and §§ 1983 and 1985(3) claims were brought against the individual defendants and her Title VII claims against their employer, the DCFS. The DCFS is "strictly liable for sexual harassment by supervisory personnel who have the power to hire, fire or promote.... [and] is liable for sexual harassment by nonsupervisory employees only when [it] has actual or constructive knowledge of the harassment." *Scott v. Sears, Roebuck and Co.*, 605 F.Supp. 1047, 1054–55 (N.D. Ill.1985) (citations omitted), *aff'd*, 798 F.2d 210 (7th Cir.1986); *Horn*, 755 F.2d at 605 ("[S]ex discrimination can best be eradicated by enforcing a strict liability rule that ensures compensation for victims and creates an incentive for the employer to take the strongest possible affirmative measures to prevent the hiring and retention of sexist supervisors."). *See also Vinson, supra*, 106 S.Ct. at 2411 (Marshall, J., concurring) ("[S]exual harassment by a supervisor of an employee under his supervision, leading to a discriminatory work environment, should be imputed to the employer for Title VII purposes regardless of whether the employee gave 'notice' of the offense."). All of the individual defendants were DCFS supervisory employees. In addition, the DCFS hierarchy was constantly aware of Volk's grievances.

■ Liability under *Title VII* for sex discrimination and sexual harassment in employment exists where a victim can "prov[e] that discrimination based on sex has created a hostile or abusive work environment...." *Vinson, supra*, at 2405–06.[14] In *Vinson*, the Court adopted guide-

---

**13.** The issue of conspiracy need not be retried because all the alleged co-conspirators, with the exception of defendants Coler and Hairston whom we have concluded were not sufficiently connected to the alleged retaliation nor to any conspiracy to retaliate, have already been tried by a jury for their alleged retaliatory acts and judgments entered against them.

**14.** 42 U.S.C. § 2000e–2 provides in relevant part:
(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;
....

Under Title VII, damages are only recoverable where discrimination "... result[s] in discharge." *Bohen, supra*, at 1184. Volk produced evidence establishing that she was being removed from her position at the Ottawa office

lines from the Equal Employment Opportunity Commission "holding that Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Id.* at 2405. An alleged victim of sexual harassment may also proceed under Title VII by employing the indirect method of proof including shifting burdens of production. *McDonnell Douglass Corp. v. Green,* 411 U.S. 792, 800–06, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973).

Resolution of Volk's Title VII claims on appeal are directly related to the resolution of her equal protection claims. In *Hussein v. Oshkosh Motor Truck Co.,* 816 F.2d 348 (7th Cir.1987), we reviewed a claim of racial discrimination brought under 42 U.S.C. § 1981 and Title VII. The plaintiff was an Egyptian-born naturalized citizen who was allegedly subjected to repeated racial harassment by the defendant's employees. The district court dismissed his § 1981 claim after concluding that § 1981 only prohibits racial discrimination against American Negroes. *Id.* at 352. The plaintiff's Title VII claim was resolved in a bench trial where the district court made findings of fact and entered judgment against the plaintiff. *Id.* at 349.

On appeal, we held that § 1981 is not limited to discrimination against American Negroes and reversed the district court's dismissal of this claim. *Id.* at 352–53. *Accord Shaare Tefila Congregation v. Cobb et al.,* — U.S. ——, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987); *Saint Francis College v. Al–Khazraji,* — U.S. ——, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). In addition, we concluded that collateral estoppel did not bar relitigation of the plaintiff's § 1981 claim following the district court's judgment on the Title VII claim because if the district court had not

> committed legal error in dismissing the section 1981 claim, Mr. Hussein would have been entitled to a jury's resolution

of those factual issues underlying his section 1981 claim and the district court would have been bound by those findings in deciding whether to grant the equitable relief requested in the Title VII count.

816 F.2d at 350. *See also Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417, 1421 (7th Cir.1986); *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 585 F.2d 821, 844 (7th Cir. 1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), *cert. denied,* 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982); *Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.1983), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102; *Heyman v. Kline,* 456 F.2d 123, 131 (2nd Cir.1972), *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88.

Volk's sex discrimination, sexual harassment and retaliation claims against the individual defendants were triable by a jury and her Title VII sex discrimination, sexual harassment and retaliation claims against the DCFS were subject to a bench trial. The claims involve the same operative facts. The DCFS is strictly liable for the actions of the individual defendants, DCFS supervisors. Their actions which occurred after January 9, 1980 have already been reviewed by the first jury, although under only one of three possible legal theories. The nature of Tapen's pre-January 9, 1980 actions will be determined by a jury's answers to special interrogatories or the conclusions implicit in its verdict.

The principles of efficient judicial administration inherent in the doctrine of collateral estoppel were not sufficient to bar relitigation of the § 1981 claim in *Hussein* and are not sufficient to bar relitigation of the §§ 1983 and 1985(3) claims in this case. As the *Hussein* majority concluded:

> The facts underlying [plaintiff's] section 1981 claim also form the basis of his cause of action under Title VII.... Ex-

---

prematurely and that she left her other position at a different DCFS office after being subjected to continued harassment based on her experience at Ottawa. Thus, Volk's charges could establish that she was actually as well as constructively discharged from her position in Otta-

wa, and constructively discharged later from her subsequent position at another DCFS office. *See, e.g., Parrett v. City of Connersville,* 737 F.2d 690, 694 (7th Cir.1984), *cert. dismissed,* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985).

cept for the error of the district court, he would have been able to obtain a jury determination of the facts underlying his discrimination complaint. . . .

We cannot sanction an application of collateral estoppel which would permit findings made by a court in an equitable proceeding to bar further litigation of a legal issue that had been properly joined with the equitable issue when those findings were made only because the district court erroneously dismissed the plaintiff's legal claim.

816 F.2d at 356–57.

The district court here improperly removed the resolution of some of Volk's legal claims from the jury's responsibility by ordering directed verdicts. Because this was error, collateral estoppel does not bar relitigation of those claims. If the directed verdicts were proper, our review of the district court's judgment would proceed under the "clearly erroneous" standard. *LaSalle National Bank, et al. v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). Instead, because the district court would have been bound by the jury's verdict on related issues, unless it set the jury verdict aside, and our decision reverses the directed verdicts on her §§ 1983 and 1985(3) claims, the judgment entered on all of the plaintiff's Title VII claims must also be reversed.

▆ A majority of the *Hussein* court affirmed the district court's judgment for the defendant on the plaintiff's Title VII claim only because it found that he had waived his appeal of that issue by raising it for the first time in his reply brief. 816 F.2d at 359–60 (Posner, J., concurring). We are not faced with that problem. Volk timely appealed the district court's judgment on her Title VII claims. We are therefore logically bound to reverse that judgment after finding that sufficient evidence supports her sex discrimination, sexual harassment and retaliation claims to entitle her to a jury trial on the §§ 1983 and 1985(3) claims before the trial court decides her Title VII equitable claims. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959). As discussed above, we only remand for a retrial on Volk's § 1983 claims against Tapen which involve acts occurring before January 9, 1980. Thereafter, the district court will be "prohibited from reconsidering any issues necessarily and actually decided by the jury." *Hussein*, 816 F.2d at 355.

The acts which the jury found to be violative of Volk's first amendment rights were acts of alleged sex discrimination and/or sexual harassment which occurred after January 9, 1980. The district court did not set this verdict aside and should have entered a verdict against the DCFS on Volk's Title VII claim of retaliation, which is based on the identical facts and strict liability. Accordingly, we direct the district court to enter judgment against the DCFS on Volk's retaliation claims under Title VII and assess $35,000 in damages. Those damages represent back pay related to the denial of Volk's promotions. 42 U.S. C. § 2000e–5(g). The DCFS is therefore jointly and severally liable for the damages imposed against defendants Tapen, Ward and Lohman. Punitive damages are not recoverable under Title VII, *Musikiwamba v. Essi, Inc.*, 760 F.2d 740, 748 (7th Cir. 1985), and Volk did not seek reinstatement, which is possible under Title VII.

Volk's Title VII claims of sex discrimination and sexual harassment which involve acts after January 9, 1980 are also based on the identical facts reviewed by the jury. Because we find no reason to remand for a jury trial on Volk's §§ 1983 and 1985(3) claims against any individual defendants for acts which occurred after January 9, 1980, we also conclude that it is unnecessary to remand for a bench trial on Volk's Title VII claims of sex discrimination, sexual harassment and retaliation against the DCFS for these post-January 9, 1980 acts.

The DCFS may be found liable for any acts of alleged sex discrimination and sexual harassment committed by Tapen which occurred before January 9, 1980. Accordingly, we remand for a bench trial on Volk's Title VII claims of sex discrimination and sexual harassment against the DCFS which comprise only those acts com-

mitted by Tapen before January 9, 1980. Evidence of his post-January 9, 1980 acts are relevant and admissible to establish a pattern and practice of discrimination and harassment but damages and/or equitable relief are limited to pre-January 9, 1980 acts. The district court will be bound by the jury's verdict, unless it sets the verdict aside, and an appropriate judgment under Title VII should be entered.

## VII.

## CONCLUSION

For the reasons stated above, we reverse the district court's directed verdicts against Tapen, Lohman and Ward with respect to the plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3), and reverse the district court's judgment for the DCFS with respect to all of the plaintiff's claims under Title VII. We remand for a new trial only with respect to the plaintiff's § 1983 and Title VII claims comprising acts occurring before January 9, 1980 allegedly committed by Tapen. We also direct the district court to enter judgment against the DCFS on Volk's Title VII retaliation claims and assess damages of $35,000. Accordingly, the DCFS is jointly and severally liable for the $35,000 award entered against Tapen, Lohman and Ward. The district court's directed verdicts in favor of defendants Coler, Hairston and Viers and against the plaintiff's due process claims are affirmed.

While we reverse certain of the district court judgments, the jury award on the retaliation claims remains intact. How that impacts on the total damages potentially recoverable by Volk we have attempted to control but cannot determine. This should lead to serious settlement discussions before any retrial.

REVERSED IN PART, AFFIRMED IN PART AND REMANDED.

MANION, Circuit Judge, concurring.

With the exception of the discussion concerning whether the defendants were entitled to a directed verdict on plaintiff's 42 U.S.C. § 1985(3) claim, I join fully in the court's opinion. I agree with the other members of the court that plaintiff is not entitled to have her § 1985(3) claim remanded for trial because she received full recovery for the actions underlying that claim when she prevailed on her First Amendment claim. Because of this disposition of plaintiff's § 1985(3) claim, there is no need for the court to address the many issues related to whether defendants were entitled to a directed verdict on that claim. These issues are better left for a case where they are more concretely before the court.